Ashburn, J.
The questions in this case arise upon the agreement of September 27, 1855, the conduct of the parties in relation to interest paid and contracted to be paid.
These questions may be considered as follows :
1. As to the effect of the tripartite contract.
2. The legal effect of that contract in relation to the interest, etc.
3. The interest and rate of interest paid.
4. The application of the money paid as interest.
On the 19th day of April, 1855, when Eortman arranged with Mueller and Gogreve for them to pay Dunlop his indebtedness on the real estate they purchased from him, it was agreed in the condition of the mortgage from them to him that there was due to Dunlop from Eortman on September 1, 1855, the sum of $11,340.05. This sum Mueller and Gogreve agreed to pay Dunlop, and gave a mortgage to that effect.
When the time for payment arrived, Dunlop wanted his money, and we infer, from the facts in the case, was moving to collect his notes and foreclose his mortgage. Mueller and Gogreve were not prepared to make payment, and wanted time. Dunlop was willing to extend the time of payment provided they would pay him ten per cent, inter *272 est for a year on the whole amount due him of both principal and interest. He wanted the interest due him capitalized and aggregated with the face of the notes so as to make a new interest-bearing principal. Hence the tripartite agreement of September 27, 1855.
That agreement, when carefully examined, and we consider the situation, rights, and wants of the parties, is easily understood. After reciting the reasons for its execution, it distinctly states that the amount due to Dunlop from Mueller and Gogreve on the Eortman notes, after aggregating principal and interest, will be, September 1, 1855, $11,340. That this sum was understood by the parties as forming a new principal, on which the interest in the future would be calculated, is manifest from several considerations. The mortgage executed by Mueller and Gogreve at the time of their purchase of the real estate agrees with the fact that the sum due Dunlop on the notes held by. him on Eortman September 1,1855, would be $11,340.05. The notes given for the forbearance to collect for one year were calculated on a principal of $11,340 ; and the agreement states that if these ten per cent, notes are paid, there would be due Dunlop September 1, 1856, “ on said notes, principal, and interest, the sum of $11,340, and no more.” It clearly provides that, in consideration of Dunlop’s forbearauce “ in collecting said notes aforesaid from said Eortman, or foreclosing stiid mortgage against said Eortman, Mueller, and Gogreve, said Mueller and Gogreve agree to pay William Dunlop ten per cent, interest on the amount due on said notes aforesaid, amounting to $11,340, including principal and interest for one year.”
In pursuance of this agreement, and as an act expressing the understanding of the parties that the forbearance was to be for one year only, and that ten per cent, under that agreement was to be paid for one year only, Mueller and Gogreve executed to Dunlop two notes for one year’s interest, each for $567. If it had been the then understanding of the parties that the forbearance was to be for a longer period, and that ten per cent, was -to be paid for a longer *273 period than one year, they would have so agreed in the writing, and executed addi tional notes for the interest.
We think this tripartite agreement in no event could be the foundation of an action for a personal judgment. It shows that the parties agreed to capitalize the interest due September 1,1855, to designate the amount of a new interest-bearing principal; that forbearance to. bring suit by Dunlop for one year was secured in favor of Mueller and Gogreve ; that a contract in writing to pay interest at the rate of ten per cent, for one year in consideration of forbearance was executed. When these were -obtained, the purpose of the agreement was accomplished.
In capitalizing the interest due on the three three-thousand dollar notes and forming a new principal to carry interest, the parties did what they might rightfully do. Interest upon interest, or compounding interest, as such, is against the policy of the law. In special cases, however, interest may be allowed upon interest. As where there is a settlement of accounts between the parties after interest has become due, or there has been an agreement for that purpose after the execution of the original contract, or upon agreed rests. A party may demand the interest due him, and turn it into principal, at his pleasure. Connecticut v. Jackson, 1 Johns. Ch. Rep., 13; Powling’s Ex’r v. Powling’s Adm’r, 4 Yates, 220; Stokely v. Thompson, 34 Penn. St., 210.
2. It is claimed by defendant in error that the tripartite agreement is substantially a contract for forbearance generally. On the other hand, plaintiffs in error urge that it is a limited forbearance, for one year only. On this point our view coincides with plaintiffs in error. To give the contract, on this question, a broader meaning, would be destructive of its plainly expressed purpose. It secured forbearance on the part of Dunlop to bring suit on his-claim for one year, and provided for the payment of ten. per cent, interest for one year on a sum of money then: agreed by the parties to be due, which sum was not to be- *274 .increased or diminished for one year. They, the parties, could have extended the forbearance for a longer time at the same rate of interest, but, as they failed to do so, it is the province of the Court to declare the contract as the parties made it.
Plaintiffs in error claim that the contract was not such “an instrument of writing” as would secure the payment of ten per cent, under the act of March 14, 1850 (Swan’s Revised Stat., 481), because that statute requires the rate of interest to be named in the writing evidencing the principal debt. This construction would be too narrow. The act is as follows :
“ Sec. 1. That the parties to any bond, bill, promissory note, or other instrument of writing, for the payment or forbearance of money, may stipulate therein for interest receivable upon the amount of such bond, bill, note, or other instrument, at any rate not exceeding ten per cent, yearly.
“ Sec. 2. That upon all judgments or decrees rendered ■upon any bond, bill, promissory note, or other instrument -aforesaid, interest shall be computed till payment, at the (rate specified in such bond, bill, note, or other instrument, mot exceeding ten per centum as aforesaid; or in case no .rate of interest be specified, at six per centum yearly.”
' It provides clearly for the payment of ten per cent, in mases where the original written contract is for the payment or forbearance of money; and we think where the instrument of writing ” stipulates to pay ten per cent, for forbearance to sue on the original contract and secures -such postponement, it is equally within the meaning of the statute. It will impart to the original note, etc., for ■the agreed time of forbearance, the power to carry ten per ■ cent, interest.
To hold that a contract in waiting to pay interest on a named sum of money, for a given time, at the rate of ten per cent., is invalid unless such stipulation was inserted in the body of the contract, would bo too narrow a construction of the statute, where the only purpose was to secure .forbearance of payment. It would, in many cases, have *275 defeated the purpose, or greatly embarrassed those who desired to avail themselves of the supposed benefits of the statute.
During the time the statute was in force written agreements for ten per cent, interest were lawful. The forms of the instruments in writing that would carry such rate it is not necessary, in this case., to determine. "We are of opinion the tripartite agreement under consideration was sufficient in form and substance to impart the quality of bearing interest at the rate of ten per cent, to the sum of money named as due upon the promissory notes of Eortman for one year, and for no longer time.
It does not carry the rate into the judgment simply because the parties have not so stipulated in the writing.
3. It is clear to us, from the evidence in this case, that after September 1, 1856, Mueller and Gogreve continued to pay interest at the rate of ten per cent, on $11,340, as a principal, until April, 1869. The receipt given to them by Dunlop for the first half year’s interest after September, 1856, shows it was given on a principal of $11,340, and reads:
“ $567. Cincinnati, March 14, 1857.
“ Received of Mueller & Gogreve five hundred and sixty-seven dollars interest on eleven hundred and thirty-four dollars for six months up to the 1st inst.
“ [Signed] Vm. Dunlop.”
All other receipts for payments, during the life of the ten per cent, law, were “ on account of interest.” Many of the other receipts, given after that time, bear internal evidence of the same thing.
4. Defendants paid Dunlop, during the time the ten per cent, statute was in force, $1,926. As I have made the calculation, that sum would pay interest at the rate of ten per cent, on $11,340, from September 1, 1856, to July 11, 1858. During this time we apply the doctrine laid down in Samyn v. Phillips et al., 15 Ohio St. 218. By the rule in that case the money paid, as interest, by defendants, at the rate of ten per cent., while the ten per cent, law remained in force, *276 was within the rate then allowed by law. It being lawful for the parties to do what they might legally bind themselves to do, this payment of $1,926, as interest, at ten per cent., should be allowed to stand without deduction.
In the language of Scott, Judge, in Samyn v. Phillips: “ As to the payments subsequently made, when the statute no longer permitted contracts for more than six per cent., they can not be deemed valid unless made in pursuance of a (valid) contract entered into while the ten per cent, law remained in force.” “ As no such contract is shown,” the payments made on account of interest after the repeal of the ten per cent, law, in excess of six per cent., must be applied to the account of principal.
¥e think the court in special term should have granted a new trial, and that the court in general term erred in affirming the judgment of the court in special term.
Judgment reversed and remanded.